UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STEPHEN W. ROBERTSON, COMMISSIONER OF THE INDIANA DEPARTMENT OF INSURANCE AND ADMINISTRATOR OF THE PATIENT'S COMPENSATION FUND, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:13-CV-107 JD ) |
| THE MEDICAL ASSURANCE COMPANY, INC. n/k/a PROASSURANCE INDEMNITY COMPANY, INC., | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This is an insurance dispute between Indiana's Patient's Compensation Fund, through its administrator, Stephen W. Robertson, and the Medical Assurance Company, Inc., which previously insured a physician whose medical malpractice spawned over 350 malpractice claims. In its First Amended Complaint, the Patient's Compensation Fund (the "Fund") asserts two counts against the Medical Assurance Company, Inc. ("Medical Assurance"). The first count asserts that Medical Assurance breached its duty of good faith to its insured, Dr. Mark S. Weinberger, in handling and defending the medical malpractice claims, which the Fund argues increased the amount of excess liability for which it had to settle with the malpractice claimants. The Fund argues that it is equitably subrogated to Weinberger's common law bad faith claim against Medical Assurance because it paid those settlements on his behalf. The second count arises out of Medical Assurance's alleged failure to pay its share of judgments entered in favor of certain of the malpractice claimants against Weinberger. Pursuant to the Indiana Medical

Malpractice Act, the Fund paid those amounts to the claimants, and is therefore subrogated to the claimants' rights to collect against Medical Assurance. Ind. Code § 34-18-15-4.

Medical Assurance has moved to dismiss both counts. [DE 26]. As to the Count I, Medical Assurance has raised four separate grounds for dismissal: (1) that Indiana law does not allow equitable subrogation of an insured's bad faith claim against its insurer; (2) that even if it did, the Fund, as a statutory entity, does not have the authority to bring such a claim; (3) that the claim is time-barred; and, (4) that the complaint does not adequately plead bad faith by Medical Assurance. Because this Court's jurisdiction is grounded in the diversity of the parties, the substantive law of the State of Indiana governs the resolution of these issues, and this Court must attempt to resolve them as would the Indiana Supreme Court. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416–17 (7th Cir. 1997). Though both parties argued that Indiana law fully embraces their respective positions as to each issue, neither party cited, nor has the Court located, any decisions by any Indiana state court directly addressing either of the first two questions.

As to the first question—whether Indiana common law permits a third party to assert an insured's bad faith claim against its insurer through the doctrine of equitable subrogation—Medical Assurance cites several appellate cases that it states stand for the proposition that "[t]here is no 'subrogated' bad faith action under Indiana law; bad faith actions are personal to the insured." [DE 27 p. 7 (citing *Menefee v. Schurr*, 751 N.E.2d 757 (Ind. Ct. App. 2001), *Dimitroff v. State Farm Mut. Auto. Ins. Co.*, 647 N.E.2d 339 (Ind. Ct. App. 1995), and *Winchell v. Aetna Life & Cas. Ins. Co.*, 394 N.E.2d 1114 (Ind. Ct. App. 1979))]. That conclusion simply does not follow from those cases, however, as they merely hold that an insurer's duty of good faith runs only to its insured, not to third parties to the insurance agreement. Those cases do not

2

address whether a claim for a breach of an insurer's duty to its insured can be assigned through equitable subrogation; in fact, the Court of Appeals of Indiana has since noted that this issue "has not been decided by an Indiana appellate court." *Querrey & Harrow, Ltd. v. Transcontinental Ins. Co.*, 861 N.E.2d 719, 724 n.3 (Ind. Ct. App. 2007).

As the Fund correctly notes, the two federal courts that have decided this issue, one of them being the Seventh Circuit, predicted that Indiana would permit the equitable subrogation of an insured's bad faith claim against its insurer. *Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co. of Am.*, 909 F.2d 228 (7th Cir. 1990); *PHICO Ins. Co. v. Aetna Cas. & Sur. Co. of Am.*, 93 F. Supp. 2d 982 (S.D. Ind. 2000) (Tinder, J.). However, the Indiana Supreme Court's more recent opinion in *State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021 (Ind. 2007) casts at least some degree of doubt on the accuracy of those predictions. In *Estep*, a third party tort claimant secured a judgment against an insured party that exceeded the insured's policy limits. *Id.* at 1022. In seeking to enforce the excess judgment against the insured, the third party asked the court to assign to it any claim that the insured had against its insurer. *Id.* The court did so, and the third party proceeded to sue the insurer for bad faith, even though the insured had been perfectly happy with its insurer's conduct. *Id.*

The Indiana Supreme Court reversed, holding that while an insured party is free to voluntarily assign a claim against its insurer to a third party, Indiana law prohibits courts from *involuntarily* assigning such claims from an insured to a third party judgment creditor. *Id.* at 1026–28. There are a number of ways in which this case is distinguishable from the question presently under consideration, but because equitable subrogation could be characterized as an involuntary assignment (since resorting to equitable subrogation would be unnecessary where the insured voluntarily assigns its claim in the first place), *Estep's* holding could arguably extend to

prohibiting the equitable subrogation of an insured's claim against its insurer. Accordingly, regardless of whether the Seventh Circuit's prediction in *Certain Underwriters* remains binding in light of *Estep*, it is clear that Indiana law is unsettled on this question.

The second open question of Indiana law is a statutory issue, namely whether the Fund has the authority to bring such a claim even if Indiana law recognizes it. Although the Indiana Medical Malpractice Act expressly states that the Fund is subrogated to the rights of malpractice claimants if an insurance company fails to pay its portion of a settlement or judgment against its insured, Ind. Code § 34-18-15-4, the Act does not directly address whether the Fund has the authority to assert an insured's claim against its insurer for bad faith. Medical Assurance argues that because the Fund is a statutory creation whose powers are limited to those provided by statute, the Medical Malpractice Act's silence on this issue deprives the Fund of this authority. However, besides citing authority for the general proposition that administrative agencies only have such authority as is conferred upon them by statute, Medical Assurance has not identified any case analyzing the scope of authority that the Medical Malpractice Act confers on the Fund, or addressing the extent to which an agency's authority can be implied as necessary to the performance of its statutory powers or obligations, for example. *See generally Wis. Patients Comp. Fund v. Wis. Health Care Liab. Ins. Plan*, 547 N.W.2d 578 (Wis. 1996) (holding that the Wisconsin Patients Compensation Fund has the implied authority to bring a suit against a primary insurer through equitable subrogation).

The Fund responds by arguing that its authority to bring such an action derives from its statutory authority to provide excess insurance, and that it should have the same rights under the common law as would a private excess insurance company. However, it did not cite a single case actually analyzing the scope of the Fund's authority or even addressing whether an

4

administrative body's statutory authority can endow it with common law rights under Indiana law. Accordingly, it again appears to the Court that Indiana law is uncertain as to how this question should be resolved.

Given this lack of certainty, these questions may be appropriate for certification to the Indiana Supreme Court pursuant to Rule 64 of the Indiana Rules of Appellate Procedure, which provides:

> The United States Supreme Court, any federal circuit court of appeals, or any federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent.

Ind. R. App. P. 64(a). Therefore, the parties are ORDERED to file briefs stating their respective positions as to whether the Court should certify these questions to the Indiana Supreme Court, along with the justification and authority for those positions. Those briefs should not exceed 5 pages, and should be filed no later than April 17, 2014.

SO ORDERED.

ENTERED: April 3, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court